IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAY T. LURZ, #288968                               *
        Plaintiff,
    v.                                               *   CIVIL ACTION NO. PJM-09-2664

JON P. GALLEY, et al.                              *
        Defendants.
                                 ***

## **MEMORANDUM OPINION**

I.     Procedural History

In filing this 42 U.S.C. § 1983 complaint for injunctive and miscellaneous relief and punitive damages, Plaintiff, who is confined at the Roxbury Correctional Institution ("RCI"), alleges that while confined at the Western Correctional Institution on October 12, 2006, he refused a direct order and was placed in a strip cell with no mattress, blankets, sheets, or hygiene items and denied one meal over the course of next six days. ECF No. 1. He asserts that being made to sleep on the floor of the cell aggravated existing injuries to his left knee, right hip, and back. Plaintiff further claims that on the night of October 12, 2006, when his "watch take" blister pack of medication was brought to his cell, he placed his arm in his food slot so as to talk to a lieutenant concerning his not being provided a dinner meal, medication, and toilet paper. As a result, he received an infraction notice and a Plexiglas barrier was put in front of his cell for the following six days; he did not receive his blister pack medications of pain and sinus pills, and he was not provided health care services as required by prison regulations. Plaintiff also contends that he was wrongfully found guilty of the infraction (holding a food slot) by a biased adjustment hearing officer ("AHO").[1] *Id*.

---

       [1]      Plaintiff asks that his adjustment decision be vacated.

II.     Dispositive Filings

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which shall be treated as a summary judgment motion. ECF No. 17. Plaintiff has filed a "Traverse" in response. (ECF No. 22). The case is ready for the Court's consideration. Oral hearing is not deemed necessary. *See* Local Rule 105.6. (D. Md. Jan. 2010).

III.    Analysis

   Mootness

Defendants argue that Plaintiff's claims regarding the conditions of his confinement are moot because he is no longer so housed. An actual controversy must exist throughout a case's pendency. *See Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974). The parties must continue to have a "personal stake in the outcome" of the lawsuit, *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 478 (*quoting Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)), meaning that throughout the litigation, the plaintiff 'must . . . suffer[], or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.' " *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Nakell v. Attorney General of North Carolina*, 15 F.3d 319, 322 (4th Cir. 1994) (quoting *Lewis,* 494 U.S. at 477).

Events occurring after a complaint is filed may moot a request for injunctive relief. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). When "on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that the mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues [are] obtained." *Lewis,* 494 U.S. at 480. Plaintiff's request for injunctive relief was mooted when he was removed from the contingency cell. Moreover, he is no longer confined at WCI. *See Calderon,* 518 U.S. at 150.

2

However, his claim for damages was not mooted. *See Williams,* 952 F.2d at 823 (prisoner's Eighth Amendment claim for monetary damages not mooted by transfer to facility with superior conditions). An actual controversy still exists for this Court to decide.

Plaintiff has raised constitutional claims respecting conditions of confinement, denial of medical care, adjustment proceedings. Each claim shall be examined *seriatim*.

    A.    Conditions of Confinement

Plaintiff claims that in October of 2006, he was placed in a WCI isolation cell for six days and denied a mattress, linens, blankets, toiletries and hygiene products (including toilet paper). He seemingly contends that he was denied a meal on the night of October 12, 2006.[2]

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See*

---

[2] In his Traverse, Plaintiff claims for the first time that he was not allowed a shower and the lights were turned on for the entire six-day period he was in a contingency cell. ECF No. 22.

*Rhodes v. Chapman*, 452 U.S. 337, 364 (1981). It is of note that the aforementioned burdens of proof remain the standard of review in the Supreme Court and this circuit.[3]

Defendants claim that Plaintiff received an infraction for refusing housing on October 12, 2006 at 1:30 p.m. after he returned from disciplinary segregation recreation. ECF No. 17, Exs. 1 & 11. He was placed into Cell 4-B-1 on administrative segregation, also referred to by Defendants as a "contingency cell" in Special Observation Housing ("SOH") pending adjustment per the order of Defendant Friend. *Id*., Ex. 2. Plaintiff claims that he was given an undershirt, a pair of boxer shorts, socks, shower shoes, and a jumpsuit. ECF No. 1 & 22. Defendants allege that a contingency cell is used to house inmates who are non-compliant or disruptive until the non-compliant behavior is modified. *Id*. They assert that the most common reasons for such placement include housing refusals and refusals to comply with strip search procedures and that inmates so assigned can remove themselves from that status at any time by notifying the wing officer of their decision to comply with staff instruction. Upon compliance the inmate is returned to his regularly assigned cell. The assignment generally stipulates a specific time period, based on the severity and type of non-compliant behavior. The inmate is to remain in the cell in an effort to assess the level of compliance displayed by the inmate. ECF No. 17, Ex. 2 at Friend Decl.

According to Defendants the contingency cells are modified to the extent that all furnishings have been removed, and all the inmate's property is temporarily confiscated until the inmate corrects his behavior. Inmates are provided with enough toilet paper to last them through each shift, so that

---

[3] The court further observes that the Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

they cannot place toilet paper on the windows to block staff's view or to otherwise misuse it. Ex. 2 at Friend Decl.

Defendant Friend affirms that he made rounds on the administrative segregation wing each day of Plaintiff's contingency cell assignment and cannot recall anything specific regarding Plaintiff's placement or any conversations with Plaintiff at that time. ECF No. 17, Exs. 4 & 5.

On the night of October 12, 2006, Plaintiff received another infraction for putting his arm in his food slot and using profanity. *Id*., Ex. 6; Ex. 7 at Puffenbarger Decl. Correctional Officer Puffenbarger placed a barrier in front of the cell because Plaintiff had the food slot open. Both Puffenbarger and Defendants Robertson and Wilson maintain that they have no independent recollection of Plaintiff's time in the contingency cell and do not recall Plaintiff asking for toilet paper or his meal. They affirm that they have not denied an inmate toilet paper, a meal, or medications when requested. *Id*., Exs. 7-9 at Puffenbarger, Robertson, and Wilson Decls. Plaintiff was removed from the contingency cell on October 18, 2006. *Id*., Ex. 17. Defendants assert that tier logs for the days in question show that rounds were made regularly on the A-C tiers and that nothing out of the ordinary occurred. *Id*., Ex. 5 at Winters Decl.; Exs. 10 & 11.

Defendants state that Plaintiff has failed to demonstrate an Eighth Amendment deprivation given the short term of his stay in the contingency cell and his failure to show any injury as a result of the alleged conditions of which he complains. The undersigned makes the following observations based upon the factual record and allegations presented to the Court: (1) there is no claim or information before the Court that there were sanitation or physical plant problems with the cell, such a lack of running water or a non-working toilet; (2) Plaintiff was placed in the contingency cell

5

because he was non-compliant with a direct order to lock in with another inmate;[4] (3) there is no material dispute that Plaintiff was placed in the cell with minimal clothing and without a blanket, mattress, or hygiene products, a barrier was placed before his food slot, and he was denied or had little to no access to showers and toilet paper[5] for the entire six-day period; and (3) Plaintiff has failed to show that he experienced a significant injury from his alleged confinement on segregation/isolation for the six-day period. While the Court questions the practice of placing inmates in a cell without a mattress, blanket or toilet paper, even for the limited period in question, due merely to non-compliance with the failure to lock in a cell, Plaintiff's failure to show that he experienced an extreme deprivation and serious injury under the Eighth Amendment standard prevents his Complaint from going forward. Indeed, had he demonstrated injury, the Court would deny Defendants' summary judgment motion.[6]

B.   Medical Care

Plaintiff claims that over the course of the six-day period in the contingency cell he was denied blister packs of medication and access to medical staff routine healthcare rounds on the tier as required under Division of Corrections Directives ("DCD"). The failure to follow state prison regulations does not, in itself, rise to the level of an Eighth Amendment claim claim.[7] This Court's

---

[4] The undersigned finds the use of the "contingency cell" most curious. Indeed, it is not clear if WCI staff were using the cell as an administrative segregation, contingency, or special observation housing ("SOH") cell. If the latter, the prison logs provided lack the specificity routinely found for SOH monitoring as to showers, medication, and observation. In any event, it is clear to the Court that the cell was used as a behavioral modification modality to "break" the inmates from non-compliant behavior.

[5] Plaintiff alleged and continues to affirm by Declaration in his Traverse that he was denied showers and toilet paper. Defendants do not refute these claims and the record clearly shows that he did not receive a shower during the time from October 12 to October 16, 2006.

[6] The event at issue occurred in October of 2006. It is not clear whether WCI still maintains this contingency cell housing practice.

[7] In order to obtain relief pursuant to 42 U.S.C. § 1983, a plaintiff must prove two elements: (1)

limited purview is to examine whether Plaintiff's right to necessary medical care for a serious medical need was denied. In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the

---

a deprivation of a right secured by the Constitution and laws of the United States, and (2) a deprivation of that right by a defendant acting under color of state law. Thus, insofar as a plaintiff complains that the defendants failed to comply with DCDs or WCI directives, this complaint is insufficient as a matter of law to support a claim for relief under § 1983. *See Riccio v. City of Fairfax, Va.*, 907 F.2d 1459 (4th Cir. 1990) (violations of a procedure not required by the Constitution does not state a due process claim); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D. S.C. 1992) (§ 1983 protects against Constitutional violations not violations of prison rules).

requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

Defendants fail to directly respond to this allegation as a free-standing Eighth Amendment medical claim. They do, however, provide tier logs and medical records which show that nurses and medical rounds were routinely made on the tier. They also show that Plaintiff filed sick-call encounter forms in the weeks after the contingency cell assignment. He complained of pain in his right shoulder and left knee on October 18, 2006, and of pain in his right shoulder on October 22, 2006. On October 23, 2006, he complained of stomach problems and headaches. On October 24, 2006, Plaintiff complained of right knee pain and loss of motion. ECF No. 17, Ex. 16. Medical staff noted that he had undergone an "unicompartmental knee replacement" for degenerative joint disease and the pain medications Tramodol and Ultram were prescribed. On October 31, 2006, he complained of a mole on his back. There is no showing that any of these subjective complaints regarding Plaintiff's extremities were long lasting and that there is a nexus between them and the alleged denial of care during October 12 to October 18, 2006.[8]

C. Disciplinary Proceedings

Plaintiff received an infraction notice on the morning of October 12, 2006, for refusing a direct order to move to another cell. Defendants state that at 8:00 p.m. on October 12, 2006, plaintiff received another infraction. Defendant Puffenbarger states that he was making medical rounds when Plaintiff refused to close his feed-up slot until he spoke to a lieutenant. He was ordered to remove his arm but refused to do so. ECF No. 17, Exs. 6 & 7.

On October 16, 2006, Plaintiff had adjustment hearings regarding the two infractions he

---

[8] The medical formulary records show, and it is not refuted, that Plaintiff received the Tramodol, twice a day, from October 12, 2006 through at least October 24, 2006. ECF No. 17, Ex. 16 at p.

received on October 12, 2006. He received 60 days of disciplinary segregation consecutive for disobeying orders and 60 days for refusing housing. Plaintiff was also given 10 days of cell restriction. *Id.,* Ex. 1. In addition, Plaintiff received 150 days consecutive of disciplinary segregation for breaching the feed-up slot, 90 days concurrent for interfering with the duties of staff, and 60 days concurrent for failure to obey orders. *Id.*, Ex. 6. Plaintiff also received 10 days cell restriction consecutive to the other cell restriction imposed. He appealed both adjustment decisions, but the AHO's decision and sanctions were affirmed by the Warden.

In *Wolff v. McDonnell*, 418 U.S. 539, 563-573 (1974), where the inmate plaintiffs were not deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates have various procedural due process protections in a prison disciplinary proceeding. The high court indicated that while "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply," minimum procedural due process must be provided. *Id*. at 566. *Wolff* set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals;[9] (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary

---

13.

[9] Inmates have no right to confront adverse witnesses in institutional disciplinary proceedings. *See Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).

action. *Id*. at 563-71 An additional procedural requirement was set forth in *Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill,* 472 U.S. 445, 453-56 (1985). In that case, the Court held that there must be "some evidence" which supports the conclusion of the AHO.

In *Sandin v. Conner*, 515 U.S. 472, 480-84 (1995), the United States Supreme Court reiterated that the *Wolff* due process safeguards must be provided when the challenged disciplinary proceeding results in a loss of good time credits. *See also O'Bar v. Pinion,* 953 F.2d 74-83-84 (4th Cir. 1991) (state-given right to good time credits creates a protected liberty interest).

According to the record on October 12, 2006, Plaintiff was cited with rule violations for the refusal to lock into and enter his cell. He received a notice of infraction that same day, asked for inmate representation, and the matter was referred to an AHO. On October 16, 2006, a hearing was held on the matter and AHO Al Davis found Plaintiff guilty of both charges on the evidence provided. Davis concluded that the "cultural" reason[10] proffered by Plaintiff for the refusal to lock in to be "unpersuasive" in light of the credibility of the notice of infraction and information reports. ECF No. 17, Ex. 1.

As already noted later on October 12, 2006, Plaintiff received additional infractions for placing his arm in and blocking his food slot, not obeying direct orders, and interfering with an officer's duties. A hearing was held on October 16, 2006, and AHO Davis found Plaintiff guilty of all charges after weighing the testimony and the Notice of Infraction. Davis concluded that Plaintiff and his representative's contention that Plaintiff's action was taken to get attention to his problem of

---

[10] Plaintiff claimed it was against his religious preferences and personal beliefs to be housed with a Black person. ECF No. 17, Exs. 1 & 6.

not receiving toilet paper and a meal to be "unpersuasive" in light of the institution's evidence.[11] *Id.*, Ex. 6.

Plaintiff was not sanctioned with the loss of good conduct credits. Due process was afforded to him respecting his adjustment proceeding under *Wolff*. There is no showing, much less allegation, the prison staff failed to provide him written notice of the infractions, the right to call witnesses and present evidence, or an adjustment hearing.[12] Moreover, AHO Davis's guilty findings were clearly based upon the evidence presented at the hearing, *i.e.*, adjustment notice, information reports and testimony. The decision satisfies the "some evidence" standard under *Hill*.

V. Conclusion

For the aforementioned reasons Defendants' motion for summary judgment is granted and judgment shall be entered in favor of Defendant and against Plaintiff. A separate Order follows.

/s/
PETER J. MESSITTE
February 10, 2011  UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff had inmate representation at the hearings.

[12] A liberty interest may, however, be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Segregation is not per se cruel and unusual punishment. *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation). Following the reasoning of the Supreme Court in *Sandin*, it appears that no liberty interest is implicated in placement on segregation. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).